ELLEN HYDE SCOVILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81308. Promulgated December 28, 1937.

*Edgar J. Goodrich, Esq.*, and *Neil Burkinshaw, Esq.*, for the petitioner.

*B. H. Neblett, Esq.*, for the respondent.

OPINION.

KERN: The only question here is whether petitioner may claim the deduction of $246,000 representing the principal of advances made to the Oil Jack Co. from 1926 to 1931, inclusive, as a debt ascertained to be worthless and charged off in 1931, under section 23 (j) of the Revenue Act of 1928, set out in the margin.[1] The petitioner contends that the advances by her to the company were bona fide loans to the corporation, not in the nature of gifts to her son, who held the major interest in the company, or capital contributions to his company; and that the time when the debt was ascertained to be worthless depended upon the judgment and discretion of the taxpayer.

On the petitioner's deposition alone we should feel grave doubts in saying whether the advances made by petitioner to the Oil Jack Co. prior to 1931 were bona fide loans, or in the nature of gifts to her son, or capital contributions to his company. Our doubts are caused by the glaring contradictions contained in petitioner's deposition, from which we set out the following quotations:

Q. While you were making these loans did you do so with full faith that they would ultimately be repaid in full to you?
A. Most certainly I did. My son was president.

* * * * * * *

Q. Do you recall whether or not you made any effort to collect these notes when they came due?
A. I cannot recall. But you must know, Mr. Neblett, I loaned this money to my son, and I knew he couldn't pay me.

Q. In fact, you knew at the time you loaned him this money that he couldn't pay you back, didn't you, Mrs. Scovill?
A. I didn't loan it to him personally; I loaned it to the Company and I thought the Company would repay me.

* * * * * * *

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

* * * *

(j) *Bad debts.*—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

Q. As I understand it, Mrs. Scovill, you never made any effort to collect the money owed you in either 1926, 1927, 1928, 1929, 1930, 1931 from either your son or the Oiljak Corporation.

A. You see, they were synonomous. He was the Company. What I wanted to do was to help him in forming the Company. Frankly, I had no idea of making money when I made the loans. And I wasn't mistaken.

Q. And it was very doubtful in your mind whether you would ever collect at the time you made them?

A. As far as I can remember, I never thought anything about whether I would collect. I wanted to help my son.

Q. And that was the main reason why these advances were made to the Corporation because you wanted to help your son?

A. Certainly.

*     *     *     *     *     *     *

Q. And your main reason for making these advances was to help your son?

A. Yes, I am not quite an idiot.

If we assume, however, in petitioner's favor, that these advances made by petitioner were loans, we can not escape the conclusion that any reasonably prudent person, under similar circumstances, would have ascertained that such loans were worthless prior to 1931, the taxable year. Petitioner's financial advisor testified that he was aware of the worthlessness of petitioner's loans to the Oil Jack Co. in 1928, and petitioner herself testified that she was advised by a series of bankers in 1926 and subsequent years that these loans were worthless. The company had had consistent net losses from 1925 to 1930, inclusive. By the middle of 1930 petitioner had notes of the company in the amount of $109,000, all of which were past due, and a demand note for $45,000 upon which not a penny of principal or interest had been paid.

It is the contention of counsel for the petitioner that only the time of petitioner's personal ascertainment of worthlessness is relevant. In other words, it is said that, because of petitioner's maternal solicitude in the business welfare of her son, who controlled the corporation in question and was regarded by her as synonymous with the corporation, she might have disregarded the business aspects of the transaction and closed her eyes to the worthlessness of the obligations of the corporation until a time long subsequent to the time when an ordinarily prudent person would have ascertained their worthlessness. We do not conceive this to be the law.

In the case of *Avery* v. *Commissioner*, 22 Fed. (2d) 6, the Circuit Court of Appeals (5th Cir.), in a case involving this question, used the following language:

It is contended by petitioner that the evidence before the Commissioner and the board was undisputed, and that, having exercised an honest belief in ascertaining and charging off the debts sought to be deducted in the year 1919, both the Commissioner and the board were concluded by his judgment.

The Revenue Act of 1918 (40 Stat. 1057), which applies to this case, permits a taxpayer, in computing net income, to deduct debts ascertained to be worthless and charged off within the taxable year. The reasonable interpretation of the law is that, in order to secure a deduction of worthless debts, they must be charged off in the year they are ascertained to be worthless. A man is presumed to know what a reasonable person ought to know from facts brought to his attention. A taxpayer should not be permitted to close his eyes to the obvious, and to carry accounts on his books as good when in fact they are worthless, and then deduct them in a year subsequent to the one in which he must be presumed to have ascertained their worthlessness. To do so would enable him to withhold deductions in his less prosperous years, when they would have little effect in reducing his taxes, and then to apply the accumulation at another time to the detriment of the fisc. This would defeat the intent and purpose of the law.

Honesty of belief in the taxpayer is not conclusive, nor binding on the board. It is the province of the board to determine, on a review of all the facts and circumstances surrounding the particular debt sought to be deducted, whether the taxpayer knew or ought to have known its worthlessness in a prior year. If knowledge of the worthlessness of a debt sought to be deducted can thus be brought home to the taxpayer, it cannot be said that the worthlessness was ascertained in the subsequent year, when it is actually charged off.

This case was cited with approval by the Circuit Court of Appeals (8th Cir.) in *McCloud* v. *Commissioner*, 43 Fed. (2d) 351. This objective test laid down in the two preceding cases cited, is also partially recognized in the case of *Jones* v. *Commissioner*, 38 Fed. (2d) 550, where the Circuit Court of Appeals (7th Cir.), in holding that the taxpayer was justified in ascertaining the debt to be worthless during the taxable year, made use of the following language:

We think that he ascertained this fact for the first time, to his own satisfaction, in 1921, *and that in arriving at such conclusion he made reasonable investigation of the fact and drew reasonable inferences from the information thus obtained.*

The point upon which petitioner cites this case has no application in the present facts, that the business was such that for the first few years of its life a prudent business man might have hoped, despite its losses, for ultimate success. The Oil Jack Co., with its increasing losses, raised no hopes in petitioner's advisers of any ultimate recovery. This is not a case of after-acquired knowledge presently applied as in the *Jones* case.

Petitioner also relies upon the case of *Clara Burdette*, 25 B. T. A. 692; affd., 69 Fed. (2d) 410. This case should not be taken as authority for more than it actually decided. The actual holding was that an obligation held by petitioner did not automatically and by operation of law become worthless in the year in which the operation of the statute of limitations barred petitioner's right of action on such obligation. The rest of the opinion in that case, which is dictum, apparently considers the case of *Jones* v. *Commissioner*, *supra*, as

authority for the exclusive application of the subjective test to the ascertainment of the worthlessness of debts on the part of taxpayers. No mention is made of the case of *Avery* v. *Commissioner, supra.* The Circuit Court of Appeals for the Ninth Circuit, in affirming the *Burdette* case, indicated that it might have held otherwise if this Board had found as a fact, as we have done here, that an average prudent person would have ascertained the worthlessness of the debt in an earlier year, for the court quoted with approval the passage in the *Avery* case to the effect that it is the province of *this Board* to determine "whether the taxpayer knew or ought to have known its worthlessness in a prior year", and founded its judgment on our determination in the premises. In the circumstances we must consider what was said beyond the determination itself in our decision of the case as *obiter dictum.*

The phrase "ascertained to be worthless" used in the statute involves two factors, actual worthlessness, or at least a state of facts from which a prudent business man would infer this ultimate fact, and actual knowledge of these facts obtained in that year by the taxpayer, or which he might have obtained had he used ordinary business sense. Since one step requires the exercise of a reasonable inference and the next step the exercise of reasonable diligence, the cases have not always clearly distinguished between the two standards of prudence, and some confusion therefore results. In the light of the decisions on this question, however, we are of the opinion that a taxpayer, even when acting in all honesty, as the petitioner was in this case, can not shut his eyes to the real facts of the business transaction and determine a debt to be worthless in a taxable year long after the year in which an ordinarily prudent person would have reached the conclusion, on facts actually ascertained by him or which he might readily have ascertained if using normal business sagacity, that such obligations were worthless.

Applying the objective standard applicable to the ascertainment of the worthlessness of obligations, as laid down in *Avery* v. *Commissioner, supra,* we must conclude, with regard to the advances made by petitioner to the Oil Jack Co. in the taxable year 1931, that such advances were made with no reasonable belief at the time that they would ever be repaid to the petitioner. Since a reasonably prudent person, under similar circumstances, would have known at the time when the advances were made that they would not be repaid, we must conclude that such advances were either in the nature of a gift to the corporation or a contribution to its capital, and therefore were not deductible as bad debts; *American Cigar Co.* v. *Commissioner,* 66 Fed. (2d) 425.

We have held that advances made by a taxpayer, even if a note is taken for their repayment, will be considered in the nature of a gift if, at the time the advances are made and the note taken, it is reasonable to believe that the note can not be enforced; *C. B. Hayes*, 17 B. T. A. 86; also that advances obviously uncollectible when made, even though an understanding exists that they will be repaid, are not deductible as bad debts; *Ezra H. Jones*, 13 B. T. A. 1271. There is an implicit postulate in *C. B. Hayes*, *supra*, and *Ezra H. Jones*, *supra*, construing the section of the act in question to the effect that the debts sought to be deducted as worthless must have had at some time a real commercial value.

Accordingly, we hold that, according to the standard of conduct of an ordinarily prudent person under similar circumstances, petitioner should have ascertained, and therefore will be considered as having ascertained, that the advances made by her to the Oil Jack Co. during the years 1926 to 1930, inclusive, were worthless prior to the taxable year 1931, and that by application of the same standard petitioner should have known, and therefore will be considered as having known, that the advancements made by her to this company during the taxable year 1931 would not be repaid to her, and that they were, therefore, in the nature of gifts or contributions to the company's capital.

Reviewed by the Board.

*Judgment will be entered for the respondent.*